UNITED TRANSPORTATION UNION LOCAL UNIONS 385 AND 77, and International Brotherhood of Electrical Workers Local Unions 817, 747, 859, Plaintiffs,

v.

METRO–NORTH COMMUTER RAILROAD COMPANY, Defendant.

No. 94 Civ. 2979 (RWS).

United States District Court, S.D. New York.

Aug. 25, 1994.

Graham, Campaign & McCarthy, P.C., New York City (J. Brian McCarthy, of counsel), for plaintiffs.

Siff Rosen, P.C., New York City (Mark S. Landman, Lori S. Wolmetz, of counsel), for defendant.

*OPINION*

SWEET, District Judge.

Defendant Metro–North Commuter Railroad Company ("Metro") has moved for an order, pursuant to Rule 12(b), Fed.R.Civ.P. ("Rule 12(b)"), dismissing the complaint in this action for lack of subject matter jurisdiction. For the following reasons, this motion is denied.

### Parties

Plaintiff The United Transportation Union has as members approximately 700 of Metro's conductors, assistant conductors, and trainmen, and has two local unions, 385 and 77. Plaintiff The International Brotherhood of Electrical Workers has as members approximately 800 of Metro's electrical workers, and has four local unions, 817, 747, 859, and 1631.

Metro is a public benefit corporation organized as a wholly owned subsidiary of the Metropolitan Transportation Authority pursuant to the Public Authorities Law of the State of New York, and is a common carrier by rail engaged in interstate commerce.

### Facts

This is a declaratory judgment action brought by plaintiffs the United Transportation Union Local Unions 385 and 77, and International Brotherhood of Electrical Workers Local Unions 817, 747, and 859 (collectively, the "Union"), challenging Rule P of Metro's Rules of the Operating Department ("Rule P") as violative of 45 U.S.C. § 60 ("Section 60") of the Federal Employer's Liability Act ("FELA").

Rule P provides that:

The business affairs of the railroad must not be divulged except to proper officials of the Company.

Upon request, employees are required to report to the Company for the purpose of

giving testimony and information in connection with any legal proceeding, claim or accident involving the Company.

When an employee is served with a subpoena, summons or other legal process in which this Company is, or may be, interested requiring such employee to report to any attorney, court or officer, employee must at once notify the head of the department in which employed and also the Legal Department of the company, and employee will be governed by instruction received.

Employees are forbidden to give any statements or information either verbal or written to attorneys or others outside of the employment of the Company about accidents or other matters pertaining thereto, excepting to attorneys or designated representatives of this Company. This rule shall not prohibit the furnishing of information to a person in interest as to the facts incident to the injury or death of any employee, provided, however, that information contained in the files of the Company, or other privileged or confidential reports, must not be divulged.

In the event employees are requested to furnish written or recorded statement to a local police officer, said employee may request representation by Metro North Legal Department before giving any statement.

Employees entrusted with Company publications such as the Rules of the Operating Department, time table, airbrake instructions or safety rules, or having access to other printed matter containing Company rules, regulations, instructions, procedures, policies, plans, specifications, statistics, revenues, car movement data or other Company business, must not loan or give away such articles, nor permit anyone except authorized Company employees to have access thereto, nor divulge, verbally or otherwise, any of the information contained therein to anyone except authorized Company employees, without proper authority.

Section 60 provides that:

Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: *Provided,* That [sic] nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

The Union seeks, among other things, to enjoin Metro from enforcing Rule P and seeks an Order requiring Metro to rescind Rule P.

### Prior Proceedings

The Union filed this declaratory judgment action on April 22, 1994. The present motion was argued on June 15, 1994. On June 16, 1994, the Union supplied the court with an order entered in the case of *Harper v. Missouri Pacific R. Co. and Union Pacific R. Co.,* 201 Ill.Dec. 760, 636 N.E.2d 1192 (1994). On June 29, 1994, the Union supplied the Court with a copy of *Hawaiian Air Lines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 which is reported at (1994). Metro responded by letter of July 1, 1994, to which letter the Union responded on July 7, 1994, on which date this motion was considered fully submitted.

### Discussion

### Standards under Rule 12(b)(1)

Metro's motion is based on the premise that this dispute involves nothing more than a challenge to one of its work rules and therefore is governed by the Railway Labor Act, 45 U.S.C. §§ 151–163 (the "RLA"), and

the exclusive grievance resolution procedures set forth in 45 U.S.C. § 153. Because the RLA vests the National Railroad Adjustment Board ("NLRB") with exclusive jurisdiction to resolve disputes such as the present one, Metro claims, this Court lacks subject matter jurisdiction over this dispute and should dismiss the case.

■ Rule 12(b)(1) allows a defendant to bring a motion to dismiss asserting a "lack of jurisdiction over the subject matter." When the existence of federal subject matter is challenged, the trial court must consider the evidence to satisfy itself as to the existence of its power to hear the case. *Brown v. United States*, 92 Civ. 82S, 1994 U.S.Dist. LEXIS 8793, at *9 (W.D.N.Y. June 8, 1994).

### The Union's Claim is Not Preempted by the RLA

■ Labor relations in the railroad industry are governed by the RLA, and, as recently explained by the United States Supreme Court:

Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. To realize this goal, the Act establishes a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes. The first class, those concerning "rates of pay, rules or working conditions," are deemed "major" disputes. Major disputes relate to "the formation of collective bargaining agreements or efforts to secure them." The second class of disputes, known as "minor" disputes, "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. Minor disputes "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."

*Hawaiian Airlines, Inc. v. Norris*, —— U.S. at ——, 114 S.Ct. at 2244 (1994) (citations omitted).

■ "Minor" disputes are preempted by the dispute resolution procedures outlined in the RLA. *Hawaiian*, —— U.S. at ——

——, 114 S.Ct. at 2243–44. While "minor" disputes are grounded in, or involve the interpretation of, a collective bargaining agreement, *see Hawaiian*, —— U.S. at —— – ——, 114 S.Ct. at 2243–45, a cause of action based on rights derived from a source outside the CBA is not necessarily preempted just because its resolution may implicate the CBA, *see id.*, —— U.S. at ——, 114 S.Ct. at 2250–51; *Coppinger v. Metro–N.C.R.R.*, 861 F.2d 33 (2d Cir.1988).

■ The preemptive effect of the RLA depends upon the locus of the right relied upon. Claims that turn upon a right afforded by the CBA are preempted, while those that turn upon a right derived from a source external to the CBA are not preempted. In *Hawaiian*, —— U.S. at ——, 114 S.Ct. at 2250–51, for example, the Supreme Court found that claims of discharge in violation of public policy and in violation of Hawaii Whistleblower Protection Act were not preempted by RLA, even though it was necessary to refer to the CBA to determine whether plaintiff was actually discharged, but also noted that the district court had dismissed as preempted the plaintiff's claims that his discharge was in violation of CBA, and plaintiff had failed to challenge this dismissal. In *Coppinger v. Metro–N. Commuter R.R.*, 861 F.2d 33 (2d Cir.1988), this Court held that an RLA arbitration of the dismissal of employee for violation of Metro–North rules did not bar a separate suit for a claim that tests violated Fourth Amendment.

In *Hendley v. Central of G.R. Co.*, 609 F.2d 1146 (5th Cir.1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981), a railroad employee was charged with disloyalty to the railroad because of his assistance in a fellow employee's FELA action against the railroad in violation of the operating rules of the railway. The plaintiff filed suit in federal court, requesting that the court enjoin the defendant from conducting a disciplinary hearing and from interfering with his employment, and alleging that the railway's activities violated Section 60. The district court held that the disciplinary procedure was a "minor dispute," and denied the plaintiff's request for an injunction on the basis of lack of jurisdiction.

The Fifth Circuit reversed, finding that, while a disciplinary hearing conducted in accordance with the procedures set out in a collective bargaining agreement would usually constitute a minor dispute, Section 60 overrode the RLA arbitration process. The court found it "illogical" that a party subject to the RLA should have to submit to a disciplinary proceeding in which he would argue that the proceeding itself was illegal, and found further that the question of whether a particular disciplinary hearing violates Section 60 involves interpretation of a federal statute, and is therefore a matter of federal jurisdiction.

In this case, the Union claims that Rule P is being enforced in violation of Section 60. While this action will perforce entail consideration of Rule P, the gravamen of the Union's complaint is that Metro's conduct violates its member's rights under Section 60. As this claim involves interpretation of a federal statute, this Court has jurisdiction over this matter.

**Conclusion**

For the foregoing reasons, Metro's motion to dismiss is denied.

It is so ordered.